Robert Ahdoot, CA Bar No. 172098
rahdoot@ahdootwolfson.com
Tina Wolfson, CA Bar No. 174806
twolfson@ahdootwolfson.com
Theodore W. Maya, CA Bar No. 223242
tmaya@ahdootwolfson.com
Bradley K. King, CA Bar No. 274399
bking@ahdootwolfson.com
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024
Tel: (310) 474-9111
Fax: (310) 474-8585

*Counsel for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| AUDREY DIAZ SANCHEZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>FACEBOOK, INC., CAMBRIDGE ANALYTICA LLC, and DOES 1-50,<br><br>Defendants. | Case No. 3:18-cv-2381<br><br>**CLASS ACTION COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Audrey Diaz Sanchez ("Plaintiff"), by and through her counsel, brings this Class Action Complaint against Defendants Facebook, Inc. ("Facebook") and Cambridge Analytica LLC ("Cambridge Analytica") (collectively, with DOES 1-50, "Defendants"), on behalf of herself and all others similarly situated, and alleges, upon personal knowledge as to her own actions and her counsel's investigations, and upon information and belief as to all other matters, as follows:

## NATURE OF THE CASE

1. This is a class action arising from Defendants' unauthorized disclosure and misuse of the personal information of at least 87 million Facebook users. Facebook permitted this unauthorized disclosure to Cambridge Analytica, a political marketing company that uses social media data for commercial purposes.

2. The personal information Defendants disclosed and/or accessed without users' consent included names, dates of birth, addresses, email addresses, locations, interests, relationships, photos, and videos (collectively, "Personal Information").

3. While the Personal Information of Facebook's users was supposed to be protected and only used for disclosed, limited purposes, Cambridge Analytica ultimately used the Personal Information for unauthorized commercial benefit.

4. Facebook knew or should have known about this unauthorized and improper use of its users' Personal Information but failed to prevent it and willfully ignored and failed to investigate the activities of Cambridge Analytica.

5. Facebook was on notice of Cambridge Analytica's misuse of this Personal Information since at least 2015, yet Facebook failed to timely notify affected users and only acknowledged the misuse after media reports surfaced in March 2018.

6. Plaintiff and the class she seeks to represent are victims of Defendants' breach of her privacy and other harms.

## PARTIES

7. Plaintiff is a resident of Santa Barbara, California, who opened her Facebook account 2007. On April 16, 2018, Plaintiff received a notice from Facebook

that her Personal Information was disclosed without her authorization to Cambridge Analytica.

8. Facebook is a Delaware corporation with its principal place of business at 1601 Willow Road, Menlo Park, California. Facebook conducts business throughout the United States and is registered to do business in California.

9. Based on information and belief, Cambridge Analytica is a Delaware limited liability company with offices in New York and Washington, DC. Cambridge Analytica's business is focused on data-driven marketing and political campaigns, combining data mining and data analysis to find voters and induce action.

10. Plaintiff is unaware of the true names and capacities of the defendants sued as DOES 1-50, and therefore sues these defendants by fictitious names. Plaintiff will seek leave to amend this Complaint when and if the true identities of these DOE defendants are discovered. Plaintiff is informed and believes and thereon alleges that each of the defendants designated as a DOE is responsible in some manner for the acts and occurrences alleged herein, whether such acts or occurrences were committed intentionally, negligently, recklessly or otherwise, and that each said DOE defendant thereby proximately caused injuries and damages to Plaintiff as herein alleged, and is thus liable for the damages suffered by Plaintiff.

## JURISDICTION AND VENUE

11. Pursuant to 28 U.S.C. § 1331, this Court has original subject matter jurisdiction over the claims of Plaintiff and the Class that arise under 18 U.S.C. §§ 2510 and 2701.

12. Further, this Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332(d)(2), in that the matter is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and members of the Class are citizens of states different from Defendants.

13. This Court has personal jurisdiction over Facebook because it is headquartered and is registered to conduct business in California. The Court has

personal jurisdiction over Cambridge Analytica because its acts and practices challenged herein occurred or were otherwise facilitated in California.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1) because Facebook resides here, and under 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this action occurred in this District.

15. Assignment is proper in the San Francisco Division pursuant to N.D. Cal. L.R. 3-2, because a substantial part of the events or omissions giving rise to Plaintiff's claims arose in San Mateo County, which is served by this Division. Facebook's principal place of business, from which Defendants' acts or omissions pertinent to Plaintiff's claims emanated, is situated in San Mateo County.

## FACTUAL BACKGROUND

16. On March 17, 2018, the New York Times reported that Cambridge Analytica had obtained approximately 50 million Facebook users' Personal Information without the users' permission (the "Breach"). *See* Matthew Rosenberg, *et al.*, *How Trump Consultants Exploited the Facebook Data of Millions*, NY TIMES (Mar. 17, 2018), https://www.nytimes.com/2018/03/17/us/politics/cambridge-analytica-trump-campaign.html.

17. As of April 17, 2018, media reports indicate that the number of Facebook users affected could be "much greater than 87 million." *See, e.g.*, Colin Lecher, *Former Cambridge Analytica employee says Facebook users affected could be 'much greater than 87 million'*, THE VERGE (Apr. 17, 2018), https://www.theverge.com/2018/4/17/17246928/cambridge-analytica-facebook-quizzes-data.

18. Facebook had assured its users that their "trust is important to us," with a data use policy indicating, "we don't share information we receive about you with others unless we have . . . received your permission; given you notice such as by telling you about this policy; or removed your name and any other personally identifying information from it." *See* Facebook Data Use Policy (Nov. 15, 2013),

https://www.facebook.com/full_data_use_policy (*available as of* Mar. 22, 2018).

19. In 2013, Dr. Aleksandr Kogan, a University of Cambridge psychology professor, reportedly gained access to the Personal Information of approximately 300,000 Facebook users who downloaded his personality quiz application, MyDigitalLife. As reported, Dr. Kogan subsequently violated Facebook's platform policies by providing access to that data to Cambridge Analytica in 2015.

20. In addition to the Personal Information of the 300,000 users who downloaded MyDigitalLife, Cambridge Analytica was able to gain access to the Personal Information of those users' Facebook friends—which now appears to be at least 87 million Facebook users.

21. On March 16, 2018, Facebook announced that it was suspending Cambridge Analytica and its parent company, SCL Group, from Facebook.

22. On March 20, 2018, Forbes released an interview with Christopher Wylie, a former Cambridge Analytica contractor, who revealed how Cambridge Analytica mined data from Facebook users' profiles and private messages to build a personality profile in order to send targeted political messages to the users. Parmy Olson, *Face-to-Face With Cambridge Analytica's Elusive Alexander Nix*, FORBES (Mar. 20, 2018), https://www.forbes.com/sites/parmyolson/2018/03/20/face-to-face-with-cambridge-analyticaalexander-nix-facebook-trump/.

23. After Facebook's unauthorized disclosure became public, its corporate officers issued numerous statements, including public apologies from CEO Mark Zuckerberg ("sorry we didn't do more at the time"; apologizing for "breach of trust"; "we are now taking steps to ensure this doesn't happen again") and COO Sheryl Sandberg ("this was a major violation of people's trust"; we regret that we didn't do enough to deal with it").

24. Despite its knowledge that Class Members' Personal Information had been collected and used without their authorization, and that such misuse of Class Members' data presented substantial risk of further misuse, fraud, and other identity theft to Class

Members, Facebook failed to provide notification to Class Members of the unauthorized disclosure and misuse of their Personal Information until March 2018, approximately three years after it was informed of the Data Breach. Based on information and belief, Facebook did not begin providing direct notice to its affected users until April 2018.

25. Facebook's failure to notify Plaintiff and Class Members of the unauthorized disclosure and misuse of their Personal Information violated of its data breach notification obligations under state laws including, *inter alia*, the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq*.

26. Consequently, Plaintiff and Class Members belatedly learned that their Personal Information had been accessed without their authorization and was allegedly used by Cambridge Analytica to create targeted political advertising to further President Trump's 2016 campaign.

## CLASS ACTION ALLEGATIONS

27. Plaintiff seeks relief in her individual capacity and as a representative of all others who are similarly situated. In accordance with Fed. R. Civ. P. 23(a) and (b)(2) and/or (b)(3), Plaintiff seeks certification of the following Class:

> All persons residing in the United States who registered for a Facebook account and whose personal information was obtained from Facebook by Cambridge Analytica without (or in excess of) authorization (the "Class").

28. Excluded from the Class are Defendants, including any entity in which Defendants have a controlling interest, is a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants. Also excluded are the judges and court personnel in this case and any members of their immediate families.

29. <u>Numerosity</u>. Fed. R. Civ. P. 23(a)(1). The members of the Class are so numerous that the joinder of all members is impractical. While the exact number of

Class members is unknown to Plaintiff at this time, based on media reports, the Personal Information of at least 87 million Facebook users was disclosed.

30. *Commonality*. Fed. R. Civ. P. 23(a)(2) and (b)(3). There are questions of law and fact common to the Class, which predominate over any questions affecting only individual Class members. These common questions of law and fact include, without limitation:

    a. Whether Defendants violated 18 U.S.C. § 2510, *et seq.*;
    b. Whether Defendants violated 18 U.S.C. § 2701, *et seq.*;
    c. Whether Facebook were negligent;
    d. Whether Defendants invaded Plaintiff's and Class Members' privacy;
    e. Whether Defendants violated California Business and Professions Code § 17200, *et seq.*;
    f. Whether Facebook violated California Civil Code § 1798.80, *et seq.*; and
    g. The nature of the relief, including equitable relief, to which Plaintiff and Class Members are entitled.

31. *Ascertainability*. All members of the purposed Class are readily ascertainable. Defendants have access to contact information for all, or substantially all, Class Members, which can be used for providing notice to many Class Members.

32. *Typicality*. Fed. R. Civ. P. 23(a)(3). Plaintiff's claims are typical of those of other Class members because Plaintiff's Personal Information, like that of every other Class member, was disclosed by Defendants without authorization.

33. *Adequacy of Representation*. Fed. R. Civ. P. 23(a)(4). Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's Counsel are competent and experienced in litigating class actions.

34. *Superiority of Class Action*. Fed. R. Civ. P. 23(b)(3). A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the members of the Class is impracticable. Furthermore, the adjudication of this controversy through a class action will avoid the

possibility of inconsistent and potentially conflicting adjudication of the asserted claims.  There will be no difficulty in the management of this action as a class action.

35. Damages for any individual class member are likely insufficient to justify the cost of individual litigation, so that in the absence of class treatment, Defendants' violations of law inflicting substantial damages in the aggregate would go un-remedied without certification of the Class.

36. Class certification is also appropriate under Fed. R. Civ. P. 23(a) and (b)(2), because Defendants have acted or have refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

## COUNT I
### Violation of the Federal Wiretap Act, 18 U.S.C. § 2510, *et seq.*
### (Against All Defendants)

37. Plaintiff incorporates the allegations above as if fully set forth herein.

38. Plaintiff, individually and on behalf of the Class, asserts violations of 18 U.S.C. § 2511(1)(a), (b), and (d).

39. The Federal Wiretap Act prohibits the intentional interception by any person of the content of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication.

40. Plaintiff's use of Facebook to convey and store Personal Information, and the transmission of that Personal Information to and from Plaintiff's Facebook account, is considered "electronic communications" within the meaning of the Wiretap Act.  18 U.S.C. § 2510(12).

41. Defendants are considered "persons" within the meaning of the Wiretap Act.  18 U.S.C. § 2510(6).

42. Defendants used one or more devices comprising an "electronic, mechanical or other device or apparatus" within the meaning of the Wiretap Act to unlawfully acquire the contents of Plaintiff's Personal Information stored in and

transmitted to and from Plaintiff's Facebook account.  18 U.S.C. § 2510(5).

43.     Defendants knowingly and purposefully "intercepted" or "endeavored to intercept" Plaintiff's electronic communications in transmit to and from Plaintiff's Facebook account without obtaining actual consent from any authorized party within the meaning of the Wiretap Act. 18 U.S.C. § 2510(4).  Likewise, Defendants intentionally used, or endeavored to use, the contents of Plaintiff's communications, knowing or having reason to know that the information was obtained through the interception of electronic communications.

44.     On information and belief, Defendants unlawfully intercepted, or endeavored to intercept, the content of these communications for the purpose of generating profit.  This conduct was not performed by any employees within the ordinary course of Defendants' business and is not an instrumental part of Defendants' operation or incidental to the operation of Defendants or the provision of Defendants' electronic communication services, nor is it for the protection of Defendants' rights or property.

45.     As a result of Defendants' violations of the Wiretap Act, Plaintiff and Class Members have suffered injury, which includes, but is not limited to, knowing and reckless impermissible interception and misuse of their electronic communications made to and from their Facebook accounts by Defendants in violation of the Wiretap Act.

46.     Pursuant to the Wiretap Act, Plaintiff and Class Members are entitled to statutory damages, actual damages, punitive damages, reasonable attorneys' fees and litigation costs, as well as declaratory and injunctive relief.

### COUNT II
**Violation of the Stored Communications Act, 18 U.S.C. § 2701, *et seq.*
(Against All Defendants)**

47.     Plaintiff incorporates the allegations above as if fully set forth herein.

48.     Plaintiff, individually and on behalf of the Class, asserts violations of 18

U.S.C. § 2702.

49. The Stored Communications Act ("SCA") prohibits a person from intentionally accessing without (or in excess of) authorization a facility through which an electronic communications service is provided and thereby obtaining an electronic communication while it is in "electronic storage." 18 U.S.C. §§ 2701(a) and 2702(a).

50. Defendants are considered "persons" within the meaning of the SCA. 18 U.S.C. § 2510(6).

51. Defendants provide "electronic communication services" within the meaning of the SCA. 18 U.S.C. § 2510(15).

52. Plaintiff's use of Facebook to convey and store Personal Information and transmission of that Personal Information to and from Plaintiff's Facebook account are considered "electronic communications" within the meaning of the SCA. 18 U.S.C. § 2510(12).

53. The servers Defendants use to provide their electronic communications services to Plaintiff and Class Members are "facilities" within the meaning of the SCA.

54. Defendants intentionally accessed without authorization or, alternatively, intentionally exceeded authorization to access, Plaintiff's and Class Members' stored electronic communications, which contained highly sensitive Personal Information.

55. Defendants knowingly divulged Plaintiff's and Class Members' stored electronic communications, which contained highly sensitive Personal Information.

56. As a result of Defendants' violations of the SCA, Plaintiff and Class Members have suffered injury, which includes, but is not limited to, Defendants' intentionally disclosing and/or misusing the contents of Plaintiff's and Class Members' stored electronic communications without (or in excess of) authorization, which contained sensitive Personal Information.

57. Pursuant to the SCA, Plaintiff and Class Members are entitled to statutory damages, actual damages, punitive damages, reasonable attorneys' fees and litigation costs, as well as declaratory and injunctive relief.

# COUNT III
**Violation of California Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.*
(Against All Defendants)**

58. Plaintiff incorporates the allegations above as if fully set forth herein.

59. Defendants engaged in unfair, fraudulent and unlawful business practices in violation of the Unfair Competition Law ("UCL").

60. Plaintiff suffered injury in fact and lost money or property as a result of Defendants' alleged violations of the UCL.

61. The acts, omissions, and conduct of Defendants as alleged constitutes "business practices" within the meaning of the UCL.

62. Defendants violated the unlawful prong of the UCL by violating, *inter alia*, the Wiretap Act and the SCA, as alleged above.

63. Defendants' acts, omissions, and conduct also violate the unfair prong of the UCL because those acts, omissions, and conduct, as alleged herein, offended public policy and constitute immoral, unethical, oppressive, and unscrupulous activities that caused substantial injury, including to Plaintiff and Class members. The harm cause by Defendants' conduct outweighs any potential benefits attributable to such conduct and there were reasonably available alternatives to further Defendants' legitimate business interests, other than Defendants' conduct described herein.

64. Defendants' conduct also undermines California public policy—as reflected in statutes like the Information Practices Act, Cal. Civ. Code § 1798, *et seq.*, concerning customer records—which seek to protect customer data and ensure that entities who solicit or are entrusted with personal data utilize reasonable security measures.

65. By disclosing and/or misusing Plaintiff's and Class Members' Personal Information without authorization, Defendants engaged in a fraudulent business practice that is likely to deceive a reasonable consumer.

66. A reasonable person would not have agreed to use Facebook had he or she

known the truth about Defendants' practices alleged herein.  By withholding material information about their practices, Defendants were able to convince users to provide and entrust their Personal Information to Defendants.

67. Defendants' unauthorized disclosure of users' Personal Information also constitutes an unfair business practice under the UCL.  Defendants' conduct is unethical, unscrupulous, and substantially injurious to Class Members.

68. As a result of Defendants' violations of the UCL, Plaintiff and Class Members are entitled to injunctive relief.

69. As a result of Defendants' violations of the UCL, Plaintiff and Class members have suffered injury in fact and lost money or property, as detailed above.  Plaintiff requests that the Court issue sufficient equitable relief to restore Class Members to the position they would have been in had Defendants not engaged in unfair competition.

**COUNT IV**
**Negligence**
**(Against Facebook)**

70. Plaintiff incorporates the allegations above as if fully set forth herein.

71. Facebook owed a duty to Plaintiff and Class members, who provided their Personal Information to Facebook in order to use their accounts, to exercise reasonable care in safeguarding their Personal Information.  This duty included, among other things, protecting it from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties without or in excess of authorization provided.  This duty also included ensuring that no third-party apps were improperly collecting, storing, and/or obtaining Plaintiff's and Class Members' Personal Information.

72. Facebook knew Plaintiff and Class Members consider their Personal Information to be sensitive and valuable, and that Plaintiff and Class Members had entrusted Facebook to safeguard their Personal Information.  Facebook acknowledged in its data use policy that it had a duty to adequately protect Class Members' Personal

Information.

73. Facebook had a special relationship with Plaintiff and Class Members as a result of being entrusted with their Personal Information, which provided an independent duty of care. Plaintiff's and Class Members' willingness to entrust Facebook with their Personal Information was predicated on the understanding that Facebook would take appropriate measures to protect it. Furthermore, Facebook was capable of protecting Plaintiff's and Class Members' Personal Information.

74. Facebook also owed a duty to Class members to notify them promptly that their Personal Information was disclosed without authorization, and Plaintiff and Class Members reasonably expected Facebook to timely disclose any such misuse.

75. Facebook breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard users Personal Information; (b) failing to disclose that its data security practices were inadequate to safeguard and prevent impermissible disclosure of users' Personal Information; and (c) failing to notify users promptly and with full information concerning the unauthorized disclosure of Personal Information to Cambridge Analytica.

76. But for Facebook's breach of its duties, Plaintiff's and Class Members' Personal Information would not have been disclosed without authorization.

77. Plaintiff and Class Members were foreseeable victims of Facebook's inadequate data security practices. Facebook knew or should have known that unauthorized disclosure of Personal Information would cause damages to Plaintiff and Class Members.

78. As a result of Facebook's negligent failure to safeguard its users' Personal Information, Plaintiff and Class Members suffered injury, which includes but is not limited to exposure to a heightened, imminent risk of fraud, identity theft, and financial harm. Plaintiff and Class Members must more closely monitor their credit histories to guard against identity theft and misuse of their Personal Information. The unauthorized disclosure of Plaintiff's and Class Members' Personal Information also diminished the

value of that Personal Information.

79. The injuries to Plaintiff and Class Members were a proximate, reasonably foreseeable result of Facebook's breaches of its duties.

80. Plaintiff and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT V
### Invasion of Privacy
### (Against All Defendants)

81. Plaintiff incorporates the allegations above as if fully set forth herein.

82. Plaintiff and Class Members had a reasonable expectation of privacy in the Personal Information that Defendants disclosed and/or accessed without authorization.

83. By failing to keep Plaintiff's and Class Members' Personal Information safe, and by disclosing said information to unauthorized parties for unauthorized use, Defendants invaded Plaintiff's and Class Members' privacy by, *inter alia*:

    a. intruding into Plaintiffs' private affairs in a manner that would be highly offensive to a reasonable person; and

    b. violating Plaintiffs' right to privacy under California Constitution, Article 1, Section 1, through the improper use of Plaintiffs' private information properly obtained for a specific purpose for another purpose, or the disclosure of it to some third party.

84. Defendants knew, or acted with reckless disregard of the fact that, a reasonable person in Plaintiff's and Class Members' position would consider Defendants' actions highly offensive.

85. Defendants invaded Plaintiff's and Class Members' right to privacy and intruded into Plaintiff's and Class Members' private affairs by disclosing and/or accessing their Personal Information without their informed, voluntary, affirmative, and clear consent.

86. As a proximate result of such unauthorized disclosures, Plaintiff's and

Class Members' reasonable expectations of privacy in their Personal Information was unduly frustrated and thwarted. Defendants' conduct amounted to a serious invasion of Plaintiff's and Class Members' protected privacy interests.

87. In failing to protect Plaintiff's and Class Members' Personal Information, and in disclosing Plaintiff's and Class Members' Personal Information, Defendants acted with malice and oppression and in conscious disregard of Plaintiff's and Class Members' rights to have such information kept confidential and private.

88. Plaintiff seeks injunctive relief on behalf of the Class, restitution, and all other damages available under this cause of action.

## COUNT VI
**Violation of the California Customer Records Act, Cal. Civ. Code § 1798.80, *et seq.*
(Against Facebook)**

89. Plaintiff incorporates the allegations above as if fully set forth herein.

90. Plaintiff's and Class Members' Personal Information that Facebook disclosed without authorization fits within the definition of "personal information" in Civil Code Section 1798.80.

91. Plaintiff and Class Members provided their Personal Information to Facebook to obtain a service from Facebook and thus qualify as "customers" as defined in Civil Code Section 1798.80.

92. By failing to implement reasonable measures to protect the Personal Information in its possession, Facebook violated Civil Code Section 1798.81.5.

93. In addition, by failing to promptly notify all affected users that their Personal Information had been disclosed without authorization, Facebook violated Civil Code Section 1798.82.

94. As a direct or proximate result of Facebook's violations of Civil Code Sections 1798.81, 1798.81.5, and 1798.82, Plaintiff and Class Members were (and continue to be) injured and have suffered (and will continue to suffer) the damages described in this complaint.

95. Facebook's violations of Civil Code Sections 1798.81, 1798.81.5, and 1798.82 were, at a minimum, reckless.

96. In addition, by violating Civil Code Sections 1798.81, 1798.81.5, and 1798.82, Facebook "may be enjoined" under Civil Code Section 1798.84(e).

97. Facebook's violations of Civil Code Section 1798.81.5 and 1798.82 also constitute an unlawful acts or practices under the UCL, which affords the Court discretion to enter whatever orders may be necessary to prevent future unlawful acts or practices.

98. Plaintiff accordingly requests that the Court enter an injunction requiring Facebook to implement and maintain reasonable security procedures.

99. Plaintiff further requests that the Court require Facebook to identify and notify all members of the Class who have not yet been informed of the unauthorized disclosure of their Personal Information, and to notify affected Facebook users of any future data breaches by email within 24 hours of its discovery of a breach or possible breach and by mail within 72 hours.

100. Plaintiff and the Class are entitled to actual damages in an amount to be determined at trial under Civil Code Section 1798.84.

101. Plaintiff and the Class also are entitled to an aware of attorneys' fees and costs under Civil Code Section 1798.84.

## COUNT VII
### Conversion
### (Against All Defendants)

102. Plaintiff incorporates the allegations above as if fully set forth herein.

103. Plaintiff and Class Members were the owners and possessors of their Personal Information. As the result of Defendants' wrongful conduct, Defendants have interfered with Plaintiff's and Class Members' rights to possess and control such property, to which they had a superior right of possession and control at the time of conversion.

104.  As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members suffered injury, damage, loss, and/or harm and therefore seek compensatory damages.

105.  In converting Plaintiff's and Class Member's Personal Information, Defendants have acted with malice, oppression, and in conscious disregard of Plaintiff and Class Members' rights.  Plaintiff, therefore, seeks an award of punitive damages on behalf of the Class.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all Class Members proposed in this Complaint, respectfully requests that the Court enter judgment in her favor and against Defendants, as follows:

A.  For an Order certifying this action as a class action and appointing Plaintiff and her Counsel to represent the Class;

B.  For equitable relief enjoining Defendants from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Plaintiff's and Class members' Personal Information, and from refusing to issue prompt, complete and accurate disclosures to Plaintiff and Class Members;

C.  For equitable relief requiring restitution and disgorgement of the revenues wrongfully retained as a result of Defendants' wrongful conduct;

D.  For an award of actual damages, compensatory damages, statutory damages, and statutory penalties, in an amount to be determined;

E.  For an award of costs of suit and attorneys' fees, as allowable by law; and

F.  Such other and further relief as this court may deem just and proper.

# **DEMAND FOR JURY TRIAL**

Plaintiff demands trial by jury of all claims so triable.

Respectfully submitted,

Dated: April 20, 2018

*/s/ Tina Wolfson*
Robert Ahdoot
Tina Wolfson
Theodore W. Maya
Bradley K. King
AHDOOT & WOLFSON, PC
10728 Lindbrook Drive
Los Angeles, California 90024

*Counsel for Plaintiff*